UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DENISE WILSON,

Plaintiff,

v.

TARGET CORPORATION,

Defendant.

Case No. C25-0970-SKV

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendant Target Corporation's ("Target") Motion for Summary Judgment. Dkt. 22. Target argues that summary judgment is appropriate here because Plaintiff cannot show that Target had notice of the unsafe condition that allegedly caused her injuries in this slip-and-fall premises liability action. Plaintiff filed a response in opposition, Dkt. 25, and Target replied, Dkt. 28, making the matter ripe for resolution. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the record, and GRANTS the motion for the reasons stated herein.

## I. PROCEDURAL HISTORY

This negligence action arises out of an injury sustained by Plaintiff Denise Wilson ("Ms. Wilson") while shopping at a Target retail store in Lake Stevens, Washington (the "Target

Store"). Dkt. 1-2, ¶¶ 3.2–3.4. On April 9, 2025, Ms. Wilson filed a complaint in Snohomish County Superior Court. Dkt. 1-2. Target removed the action, asserting diversity jurisdiction under 28 U.S.C. § 1332. The parties consented to proceed before the undersigned Magistrate Judge.

## II. FACTUAL BACKGROUND

On April 18, 2022, Ms. Wilson was employed at an optical services outlet housed within the Target Store.[1] Dkt. 1-2, ¶ 3.4. During an abbreviated meal break, she left her post and entered the Target Store to buy a candy bar. Dkt. 26-7 at 5. She took a path towards the cash registers through the bicycle section of the Target Store. *Id.* at 6. While passing the endcap of Aisle E38, she slipped on a clear, wet substance and fell (the "Accident"). *Id.* at 5–9; Dkt. 26-8 at 3–4. The Target employees who responded to the Accident included Drew Pearson and Samantha Zeigler. Dkt. 26-5 at 6. At the time of the Accident, Ms. Wilson described the Accident and her injuries to Pearson and Zeigler, according to reports they prepared immediately thereafter. Dkts. 26-1 – 26-3.

Plaintiff asserts that she slipped in a puddle of bubble solution that was on the floor for approximately 20 minutes before the Accident. Record evidence supports this assertion. On security video footage of the area, a child and adult appear in the frame near an endcap stocked with pink and green jugs about 20 minutes before Ms. Wilson's Accident. Dkt. 23-3 at 00:00:24. The adult stoops down to retrieve an item stocked near the bottom of the endcap, picks up a green jug, drops it, and then replaces the item and takes a different jug. *Id.* at 00:00:50–01:10. About thirteen minutes later, a different child approaches the spot, appears to react to the presence of something on the floor, and continues on. *Id.* at 00:14:00. Ms. Wilson's fall is

[1] Plaintiff's employer, Luxottica of America, Inc., d/b/a Target Optical, was a separate business from Target. Dkt. 1-2 at 2.

outside the frame, but the video shows employees and others responding to the fall shortly thereafter.

Target acknowledges that Plaintiff fell within the Target Store on a clear liquid substance that was difficult to see, and that "for the purposes of this motion," it "could be inferred in Plaintiff's favor" that the guest who handled the product prior to the fall "was the cause of the substance to be on the ground." Dkt. 28 at 8. Pearson and Zeigler prepared written reports after responding to the Accident. Dkt. 26-9 at 2–6; Dkt. 26-10 at 3–5. The reports identified the liquid substance on the floor as Sun Squad bubble solution. Dkt. 26-1 – 26-3. Additionally, Ms. Wilson testified that the store employee who responded to her fall identified "bubble gel" as the "culprit" for her fall. Dkt. 26-7 at 8–9.

Relevant to the question of notice, it is undisputed that neither Pearson, nor Zeigler were aware of the spill or any report of a spill before the Accident. *See* Dkt. 26-9 at 12–14. Closing team leader Pearson testified that there was no formal policy of regular inspections of aisles, that he shared responsibility for the Accident area with other supervisors on duty, and that all store employees were responsible for looking out for spills and debris in aisles. *Id.* at 7–9, 18. Company policy would have required any employee who came across the spill to place cones and warn others of the spill until it could be cleaned. *Id.* at 15, 18.

Relevant to the question of unsafe conditions caused by the spill, Ms. Wilson submitted the declaration and report of Levi Dixon, retained by Plaintiff to provide expert opinion testimony. Dkt. 27. Dixon's report indicates that the vinyl composition tile flooring used at the

///

///

///

Target Store becomes very slippery when wet and near frictionless when coated with bubble solution.[2] Dkt. 27-2 at 6.

Target now moves for summary judgment on the basis that there is no evidence that the spill had been on the floor long enough to provide constructive notice to Target of the spill, and that without such notice, Target cannot be held liable under Washington law for Plaintiff's damages. Dkt. 22 at 5–7.

## III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that the movant is entitled to prevail as a matter of law. *Id.* If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then

[2] The conclusion referenced here is considered because it is unchallenged by Target. Dkt. 28 at 8 ("Plaintiff's expert tells this Court what was already undisputed: that the floor was slippery when the wet substance was on the ground, that Target sells liquids, and that Target has policies to clean up spills when they happen."). "Where the moving party has not raised a substantive challenge to the authenticity of the reports or the predicted trial testimony of the experts, the Court has discretion to consider the reports" on summary judgment. *Wineland v. Air & Liquid Sys. Corp.*, 523 F. Supp. 3d 1245, 1250 n.2 (W.D. Wash. 2021).

shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1060 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248).

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these responsibilities are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249–50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (cleaned up and quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)). "A trial court can only consider admissible evidence in ruling on a motion for summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002).

///

///

## IV. DISCUSSION

In this diversity action, the Court applies Washington state law to substantive legal questions. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). "A cause of action for negligence under Washington law requires the plaintiff to establish '(1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury.'" *Sudre v. The Port of Seattle*, C15-0928JLR, 2016 WL 7035062, at *8 (W.D. Wash. Dec. 2, 2016) (quoting *Pedroza v. Bryant*, 101 Wn.2d 226, 228, 677 P.2d 166, 168 (1984)). "In a premises liability case, the cause-in-fact element traditionally requires proof that the defendant had actual or constructive notice of the alleged unsafe condition." *Galassi v. Lowe's Home Centers, LLC*, 4 Wn.3d 425, 428, 565 P.3d 116, 119 (2025).[3] The Washington Supreme Court has recognized an exception to the traditional notice rule, in which "the plaintiff must prove they were injured by 'specific unsafe conditions that are continuous or foreseeably inherent in the nature of the business or mode of operation.'" *Id.* at 121–22 (quoting *Johnson v. Liquor & Cannabis Bd.*, 197 Wn.2d 605, 614, 486 P.3d 125, 132 (2021)).

There is no evidence in the record that Target had actual notice of the spill. Target is therefore entitled to summary judgment unless the evidence in the record demonstrates a genuine issue of material fact as to either constructive notice or the applicability of the reasonable foreseeability exception. *See id.* at 119.

---

[3] The Washington Supreme Court has elsewhere described actual or constructive notice as relevant to the existence of a defendant's duty, rather than the cause-in-fact element. *Iwai v. State, Employment Sec. Dep't*, 129 Wn.2d 84, 96, 915 P.2d 1089, 1094 (1996); *see also Chaudhry v. Day*, 31 Wn. App. 2d 225, 232, 548 P.3d 279, 283 (2024) ("actual or constructive notice of the defect is an essential element of establishing the existence of a duty.").

*A. Constructive Notice*

"The constructive notice rule requires the plaintiff to establish how long the specific dangerous condition existed in order to show that the proprietor should have noticed it." *Wiltse v. Albertson's Inc.*, 116 Wn.2d 452, 458, 805 P.2d 793, 796 (1991). "'Constructive knowledge exists if the unsafe condition has been present long enough that a person exercising ordinary care would have discovered it.'" *Id.* at 797 (quoting *Kangley v. United States*, 788 F.2d 533, 534 (9th Cir. 1986)). The plaintiff has the burden of proving constructive knowledge of an unsafe condition. *Kangley*, 788 F.2d at 534. To show constructive notice, Ms. Wilson must show "that the condition 'has existed for such time as would have afforded [Target] sufficient opportunity, in the exercise of ordinary care, to have made proper inspection of the premises and to have removed the danger.'" *Trujillo v. Wal-Mart Stores Inc.*, 356 F. Supp. 3d 1068, 1072 (W.D. Wash. 2018) (quoting *Wiltse*, 805 P.2d at 796). "[T]he decisive issues are the length of time the condition is present and the opportunity for discovery under the circumstances proved." *Burdette v. Steadfast Commons II, LLC*, C11-0980RSM, 2013 WL 127610, at *3 (W.D. Wash. Jan. 9, 2013) (citing *Coleman v. Ernst Home Ctr., Inc.*, 70 Wn. App. 213, 220, 853 P.2d 473, 477 (1993)).

"[T]he length of time that a danger has existed has been viewed as an important consideration in slip and fall cases." *Coleman*, 853 P.2d at 477. Ms. Wilson has produced evidence from which it could be inferred that she slipped in bubble solution that was spilled approximately twenty minutes earlier. Ms. Wilson acknowledges, however, that cases decided under Washington law do not definitively establish whether twenty minutes is sufficient or insufficient to show constructive notice as a matter of law, Dkt. 25 at 17, and the Court agrees with her characterization. For example, in *Rodriguez v. U.S. Postal Serv.*, C07-1818 MJP, 2009

WL 210707 (W.D. Wash. Jan. 28, 2009), the court found an issue of material fact as to constructive notice, where evidence supported an inference that a hazard was present for as much as one and a half hours. *Id.* at *3. By contrast, the appellate court in *McPherson v. Wal-Mart Stores, Inc.*, 1 Wn. App. 2d 1046, 2017 WL 6388987, at *2 (2017) (unpublished), affirmed summary judgment in defendant's favor, reasoning that eight minutes is insufficient to show constructive notice of a shampoo spill in a shampoo aisle. *See also Smith v. Food Pavilion*, 174 Wn. App. 1056, 2013 WL 1810619, *2 (2013) (unpublished) (no constructive notice where unexplained puddle of water existed no more than five minutes before fall).[4] Twenty minutes provides a modicum more opportunity for discovery than the insufficient eight-minute period in *McPherson*, but significantly less than the hour-plus period the *Rodriguez* court held sufficient to create a fact issue as to constructive notice.

Aside from timing, the other "decisive issue" in showing constructive notice is "the opportunity for discovery under the circumstances proved." *Burdette*, 2013 WL 127610 at *3. Put differently, this aspect of constructive notice concerns whether defendant "by the exercise of reasonable care would discover the condition." *Johnson*, 486 P.3d at 131 & n.4 ("Thus, constructive notice is the same as 'by the exercise of reasonable care would discover the condition.'") (quoting Restatement (Second) of Torts § 343 (Am. Law Inst. 1965)).

Target suggests, and the Court agrees, that there is little in the record to indicate whether twenty minutes afforded sufficient opportunity for Target employees to discover the spill in the

[4] For the proposition that five minutes may constitute sufficient constructive notice, Ms. Wilson directs the court to *Morton v. Lee*, 75 Wn.2d 393, 397, 450 P.2d 957, 960 (1969), *holding modified by Pimentel v. Roundup Co.*, 100 Wn.2d 39, 666 P.2d 888 (1983). Target properly distinguishes that case because it predates *Pimentel.* "*Morton* governed the narrow exception to establishing actual or constructive notice *before* our Supreme Court adopted the *Pimentel* exception." *Coleman*, 853 P.2d at 477–78 (noting that situations like that in *Morton* gave rise to *Pimentel* and that *Morton* has "little additional utility today."). For the same reason, the Court also finds unpersuasive out-of-state cases that developed outside of Washington's jurisprudential framework.

exercise of reasonable care. There is evidence that Target had no "schedule of regular inspections of aisles" and that Target employees were instructed to always be on watch for spills or misplaced items and to call attention to them and ensure cleanup. Dkt. 26-9 at 18. There is evidence that the Target Store contained numerous aisles, *id*. at 21–22; Dkt. 26-11, that as few as six employees were present at the Target Store at the time of Ms. Wilson's fall, and that none of them were near the Accident site when it took place. *See* Dkt. 25 at 8–9. But aside from a conclusory characterization of Target's housekeeping measures as generally inadequate, Ms. Wilson does not make a supported argument that Target's employees should have become aware of the spill in the elapsed twenty minutes.

*Coleman* discusses how a plaintiff might demonstrate a lack of reasonable care, to raise a fact question as to constructive notice. 853 P.2d at 479. In that case, plaintiff "tripped in a hole in the tire-mat carpeting and fell in the entryway" approximately eight to ten feet from a store's cashier station. *Id.* at 474. The store's employees performed regular safety inspections once per day before the store opened. *Id.* Rejecting the plaintiff's contention that the proprietor's deficient housekeeping practices raised a material question of fact as to constructive notice, the *Coleman* court reasoned that, "there must first be some evidence, in this case, from which a rational trier of fact could infer that to inspect only once a day, just before 9:00 a.m., was not adequate because the known frequency of loosened tire strips required greater vigilance." *Id.* at 478. The *Coleman* court reasoned:

> Constructive notice could be established by proving that (a) the strips had come loose long enough before the fall that a reasonably prudent shopkeeper with adequate housekeeping procedures would have found the hole, or (b) there was an *unreasonable* risk of these strips coming up so that a reasonably prudent shopkeeper would know he had to inspect *more than* once a day. Coleman failed to present evidence on any of these theories of liability.

*Id.* at 479.

As in *Coleman*, Plaintiff presents no evidence from which a trier of fact could conclude that the bubble solution presented an unreasonable risk of spills requiring greater vigilance than Target exercised, or that the bubble solution had been spilled long enough that a proprietor with adequate housekeeping procedures would have found it. Target's "housekeeping practices are relevant to the issue of constructive notice, but there is no basis for submitting the issue to a jury unless there is some evidence from which it could infer that [those practices] were not adequate" because the risk posed by bubble solution and vinyl floors "required greater vigilance." *Carlyle*, 896 P.2d at 753. *Coleman* cautions that "there is no liability for harm from conditions from which no unreasonable risk was to be anticipated." 853 P.2d at 478.

Here, although there is evidence that the spill existed for a non-negligible amount of time, without some evidence that its discovery should be expected in twenty minutes, or that there was anything unreasonable about the care Target exercised, a reasonable jury could not conclude by a preponderance of the evidence that Target had constructive notice of the spill prior to Ms. Wilson's fall. Accordingly, summary judgment will be GRANTED for failure to demonstrate a material issue of fact as to constructive notice.

*B. Reasonable Foreseeability Exception*

The Washington Supreme Court recognized the reasonable foreseeability exception in *Pimentel v. Roundup Co.*, 100 Wn.2d 39, 50, 666 P.2d 888, 893 (1983).[5] The exception dispenses with the notice requirement under certain conditions, recently described by the

---

[5] The rule has been referenced as the *Pimentel* exception, the self-service exception, the mode-of-operation exception, and the "reasonable foreseeability" exception. *See, e.g.*, *Brower v. Target Corp.*, 3:24-CV-05524-TLF, 2025 WL 3635705, at *4 (W.D. Wash. Dec. 15, 2025) ("plaintiff has not shown the *Pimentel* mode-of-operation exception applies"); *Gaytan v. Lowe's Home Centers, LLC*, C24-0470-JCC, 2025 WL 1115412, at *3 (W.D. Wash. Apr. 15, 2025) ("the reasonable foreseeability exception (also commonly known as the *Pimentel* exception)"); *Trujillo*, 356 F. Supp. at 1072 ("The circumstances described in *Pimentel* are referred to as the 'self-service exception[.]'").

Washington Supreme court as follows: "Our precedent has made the exception from *Pimentel* into a general rule that an invitee may prove notice with evidence that the 'nature of the proprietor's business and his methods of operation are such that the existence of unsafe conditions on the premises is reasonably foreseeable.'" *Johnson*, 486 P.3d at 134 (citation omitted). "Determining whether an unreasonably dangerous condition existed is not automatic. This is especially true in slip and fall cases. 'It is well established in the decisional law of this state that something more than a slip and a fall is required to establish ... the existence of a dangerous condition.'" *Id.* (quoting *Brant v. Mkt. Basket Stores, Inc.*, 72 Wn.2d 446, 448, 433 P.2d 863, 865 (1967)).

The Washington Supreme Court considered the reasonable foreseeability exception most recently in *Galassi*. 565 P.3d at 118. The *Galassi* court considered whether the trial court properly granted summary judgment where a customer at Lowe's Home Center was injured when an improperly shelved two-by-twenty-five foot roll of wire garden fencing fell on her. *Id.* The court found a genuine issue of material fact as to the applicability of the reasonable foreseeability exception because the trier of fact could infer from evidence in the record: (a) that Lowe's methods of operation included allowing customers to help themselves to bulky rolls of fencing wire on high display shelves; (b) that customers sometimes restocked such items improperly; and (c) that bulky improperly shelved fencing could fall and injure customers. *Id.* at 126. While cautioning that there is no set checklist for demonstrating the potential applicability of the reasonable foreseeability exception, the *Galassi* court noted that consideration of the "nature of the business and methods of operation" may include:

> the physical features and layout of the store, including the location where the injury occurred; the types of merchandise offered for sale; where and how different types of merchandise are displayed; the extent to which customers are required or encouraged to interact with the merchandise before purchase; typical customer

> patterns and behaviors; where store employees are generally situated; whether there is signage providing instructions or warnings to customers; any history of prior injuries; the store's safety, inspection, or maintenance policies; and even the store's geographical location and relevant local weather patterns.

*Id.* at 124–25.

This case is easily distinguishable from *Galassi*, in that a large bulky role of fencing stocked above eye level presents a more obvious hazard than a sealed bottle of liquid stored on a low shelf above vinyl flooring.[6] Based on the record before this court, the bubble solution poses no greater risk than any soapy liquid stocked in any store.

Other courts in Washington have found summary judgment inappropriate where evidence created a genuine issue of material fact as to the foreseeability of the unsafe condition in the area where an accident occurred, but those courts identified some showing linking the mode of operation to the foreseeability of risk. *See Compton v. Target Corp.*, 2:24-CV-00937-TLF, 2025 WL 2323392, at *7 (W.D. Wash. Aug. 12, 2025) (specific evidence, including policies showing retail store was aware that wet weather conditions created safety risks, precluded summary judgment as to whether risk of slipping in unknown liquid was foreseeable, especially during wet weather); *Trujillo*, 356 F. Supp. 3d at 1075 (evidence of company policy identifying dry grocery area as one facing a greater risk of spills created issue of material fact as to "whether Wal-Mart knew that an unsafe condition was reasonably foreseeable in the dry grocery area"); *White v. Safeway, Inc.*, 143 Wn. App. 1019, 2008 WL 501472 at *3 (2008) (unpublished decision)

---

[6] Given its broadest reading, *Galassi* could be argued to require courts to find a material issue of fact as to reasonable foreseeability any time a proprietor's methods of operation are such that a customer's improper restocking of merchandise could give rise to an unsafe condition or accident, as allegedly happened here. This Court reads *Galassi* as taking care to avoid such a broad holding by emphasizing factors that tend to make the risk reasonably foreseeable, in that case, "a bulky, improperly shelved, 2x25 foot roll of wire fencing." *Galassi*, 565 P.3d at 126. Implicit in this reasoning is the principle that "[f]or conduct to be negligent, it must be unreasonable in light of a recognizable danger." *Bodin v. City of Stanwood*, 130 Wn.2d 726, 733, 927 P.2d 240, 244 (1996) (citing W. Page Keeton et al., *Prosser and Keeton on Torts* § 31, at 170 (5th ed. 1984).

(overturning summary judgment and finding issue of material fact as to foreseeability of risk where plaintiff slipped and fell in "chicken grease very near the roasted chicken cart.").

On the other hand, it is inappropriate to apply the reasonable foreseeability exception if there is no relationship between the hazard and the mode of operation of the business. *See, e.g.*, *Gaytan v. Lowe's Home Centers, LLC*, C24-0470-JCC, 2025 WL 1115412, at *4 (W.D. Wash. Apr. 15, 2025) (insufficient evidence linking home improvement store's operations to dangerous sand or gravel in the shopping cart area of parking lot); *Brower v. Target Corp.*, 3:24-CV-05524-TLF, 2025 WL 3635705, at *2 (W.D. Wash. Dec. 15, 2025) (no evidence as to how reddish punch-like liquid came to be on floor near shopping carts or store policies/procedures linking spills to that area); *Wiltse*, 805 P.2d at 794 (leak from roof not tied to business operations); *Carlyle*, 896 P.2d at 752 (leaking shampoo bottle not foreseeable in the coffee aisle); *Casey v. Safeway, Inc.*, 97 Wn. App. 1090, 1999 WL 1033565, at *3 (1999) (unpublished) (wet substance of unknown origin not foreseeable on floor "near where customers stand in a checkout"). To apply the exception, there must be evidence in the record "from which it could reasonably be inferred that the nature of [Defendant's] business and its methods of operation are such that unsafe conditions are reasonably foreseeable" in that area, beyond the mere presence of a slippery substance on the floor. *Carlyle*, 896 P.2d at 753 (alteration added).

Here, as in cases in which the exception was found inapplicable, there is no evidence from which a trier of fact could infer a connection between the fact of the spill and Target's mode of operation, beyond the fact that a Target customer appears to have spilled a Target product. For example, in *Brower*, the plaintiff slipped on a Hawaiian-Punch like substance in a retail store near the shopping carts and a Starbucks counter. 2025 WL 3635705, at *3. This Court found the reasonable foreseeability exception inapplicable because, in short, there was no

showing of a connection between the spill and Target's mode of operation: "plaintiff has produced no evidence that spills often occur in the shopping-cart area, that Target employees expected spills to occur in that location, or that Target's method of operation created continuous or inherent risks of liquid accumulating on the floor in the area where plaintiff slipped." *Id.* The *Brower* court noted that "Washington courts have declined to apply the *Pimentel* exception where the hazard at issue is isolated, unexplained, or not meaningfully connected to a continuous or inherent feature of the defendant's operations." *Id.*

Here, the evidence suggests a hazard caused by an isolated incident—another customer dropping and spilling the bottle—rather than a continuous or inherent feature of Target's business. "There are no facts from which it could be inferred that anything but a transitory condition caused [Ms. Wilson's] fall." *Carlyle*, 896 P.2d at 754. There is no evidence that the product was improperly stocked, that the packaging is prone to breakage or leaks, that spills near the bubble solution are frequent or expected, or that customers regularly caused this kind of spill.

Because evidence in the record provides no basis from which a reasonable trier of fact could infer that Target's mode of operation makes unsafe spills of bubble solution reasonably foreseeable, the Court GRANTS Target's motion as to the reasonable foreseeability exception.

## V. CONCLUSION

For the reasons discussed herein, Defendant Target Corporation's Motion for Summary Judgment, Dkt. 22, is GRANTED.

Dated this 9th day of November, 2026.

S. KATE VAUGHAN
United States Magistrate Judge